Curia., per Frost, J.
The grounds of appeal present three substantive objections, in law, to the instructions of the presiding Judge. 1st, That if the capacity of the testator be doubtful, proof of instructions, or of reading over the will, is indispensable to its validity, and cannot be supplied by other proofs of knowledge and assent to the dispositions contained in the will. 2nd. That the letters of the testator to Louisa Waters were improperly admitted in evidence; and 3rd, that the will of Isabella M’Ninch, the widow and principal devisee of the testator, was not competent evidence.
In considering the first objection, it must be conceded that the testator was of doubtful capacity, because the question depends on its admission.
It is essential to a valid will that it express the intention of the testator. For this purpose it must appear that the testator was capable of making and comprehending the dispositions of property contained in the will; that it does, in fact, declare his intention, or, what is equivalent, that he knew its contents ; and lastly, that he expressed his as *236 sent to the instrument, propounded as his will, by executing it with the solemnities required by law.
Where a testator is of sound mind his knowledge of the contents of the will, as of any other instrument, is presumed from the fact of execution. If he be of doubtful capacity, the law requires that the presumption, arising from the fact of execution, should be confirmed by additional and more direct proof of assent. The character of that proof is to be considered.
In this inquiry, the attention is immediately directed to the various modes by which the assent of the testator may be proved. The face of the will presents the first proof, from the presumption to be derived from the reasonableness or unreasonableness of its dispositions. In the last disposition of a man’s property, it is reasonable to suppose that the claims of natural affection, gratitude, friendship and duty, should be provided for. Proof of these claims, and a just provision for them, afford a presumption of assent. The neglect of such claims, and an unaccountable, or vicious, benefaction of mere strangers, or the objects of degrading intimacy, raise a contrary presumption. If the improbability of assent to such gifts be increased by the designing character of the legatees; their opportunities to impose on the confidence or weakness of the testator ; and by proof of circumstances favorable to the practice of fraud, coercion, or the exercise of undue influence, the presumption against assent is greatly strengthened. Evidence of declarations, before or after the execution of the instrument, in conformity with its disposals of property, and the recognition of the claims of kindred and dependants, as subjects for testamentary provision, which have been satisfied, afford proof of assent of very direct and effective force. The good faith and honesty manifested in the' preparation of the will ; the character of the parties who had an agency in the matter ; the exemption from all interest, or, what is more, an agency to the prejudice of their interest, by those who have prepared and aided in the execution of the will, are circumstances strongly affecting the proof, that the instrument does express the will of the testator.
When the validity of a will is disputed, as having been *237 procured by fraud, circumvention, undue, influence, or practices on the testator’s weakness, not so great as to make his capacity doubtful, proof of all the circumstances adverted to, as aifecting the issue, is admitted; and wills have been set aside on such proof, notwithstanding an exact compliance with all the usual formalities of execution ; and on the contrary, they have been supported, notwithstanding the omission of some one or more of those formalities not required by the statute law, or on very slight proof of them.
But it is insisted on behalf of the appellants, that where the testator is of doubtful capacity, the rules of evidence, which obtain in those cases, do not apply; and that in such cases, proof of instructions, or reading over the will, is indispensable, and cannot be supplied by any other. For this, the case of Tomkins vs. Tomkins, 1 Bail. 92, is relied on. A new trial was ordered in that case, because there was no proof of reading or instructions. In cases of doubtful capacity, it is a rule, and a cogent one, that such proof should be given. That was deemed a fit case for the application of the rule, and was decided by it. But the recognition of the rule in its application to .that case, does not warrant the position, that the rule is exclusive and universal. The case of Billinghurst vs. Vickers, 1 Phill. 199, on the authority of which the case of Tom-kins vs. Tomkins was decided, indicates the limitations with which the rule was approved. Many considerations determined the enforcement of the rule in Billinghurst vs. Vickers. Sir John Nicholl, after reviewing the proofs in the case ; considering the extremely doubtful capacity of the deceased at the time of execution; the total absence of proof of any instructions, or of anything which could be considered a substitute for them ; that the part of the will, which was in issue, was written by one of the legatees, the other part having been written by the testator; that the whole transaction was conducted by the two interested parties, and was wholly unsupported by any sort, whatever, of testamentary declarations, or of recognitions made by the deceased himself, concludes, “ that the safer course is to adhere to the rule, that when the capacity is doubt *238 ful at the time of execution, and there is no evidence of instructions, especially where the act is done through the agency of the party interested, the proof of mere execution is insufficient.”
The extent and operation of the rule, is plainly limited by the circumstances which directed its application in that case. The conclusion that, under the circumstances premised, it was safer to adhere to the rule, necessarily implies that the rule is not of exclusive and universal operation, but must be determined by circumstances. The authority of that decision does not extend to this — that in the absence of all the circumstances which determined its application, it should prevail as a rule of evidence. Giv- ' ing effect to the whole reasoning of the decision, it affirms that the rule, that where capacity is doubtful, there must be direct proof of instructions, or of reading over, only applies, or at least only applies with any degree of stringency, where there is an entire absence of all proof of instructions, or of anything which could be considered a substitute for them; when the disposition is not consonant to the natural affections and moral duties of the deceased, and where it is obtained by a party materially interested, and under circumstances which place the deceased under his power, control, or influence; where the transaction is conducted by interested parties, and is unsupported by any sort of testamentary declarations or recognitions of the deceased. The case of Tomkins vs. Tomkins, when it affirms and applies the authority of that decision, must be understood to affirm the general rule with the limitations by which it is accompanied.
The effect of the rule contended for by the appellants, is not to prescribe what proof is competent and admissible, but to define and limit the effect of evidence, and to control the judgment of the jury on a question of fact. When many facts and circumstances affecting the question of the assent of the testator to the provisions of the will, sufficient to establish, with moral certainty, the fact, are produced in evidence, it is not consistent with the admitted function of the court to set aside a verdict supporting such .a will, by the enforcement of a rule which prescribes ar *239 bitrary conditions to belief. It would be easy to state a case, in which the assent of a person of doubtful capacity to a will, without proof of reading or instructions, may be established in a manner so clear and satisfactory, as to put the question beyond all reasonable doubt. Shall the proof of the claims of natural aifection and duty, long and habitually recognised, which are duly provided for by the deceased in his last will, confirmed by repeated previous declarations of intention, carried into effect by former wills, and affirmed by undisputed subsequent acknowledgments, not be sufficient to support a verdict in favor of a will without proof of reading and instructions 1 The rule contended for, if it prevails, goes to this extent. To such an alleged will may well be applied what is said in the case of Brogden vs. Brown, 2 Eng. Ecc. R. 372. Proof of mere acquiescence “ would so compensate for any want of direct evidence of instructions given a priori, that proof of these facts alone, in conjunction with proof of almost any, whatever, glimmering of capacity, at the time of the execution, would be good to support the will; and would sufficiently indicate mind and volition to justify a court of probate in pronouncing for it as a genuine and valid will"
The objection to the admission in evidence of the letters, has not been seriously urged. Proof of previous declarations, in conformity with the provisions of a will, are constantly received in evidence, in proof of the assent of the testator. That such declarations are in writing, gives them additional effect, as indicating a deliberate purpose and excluding misapprehension of their import.
The will of Isabella M’Ninch was also properly received in evidence. In the letters of the testator and his wife to Louisa Waters, which were signed by them jointly, they promised, in terms which imposed the most solemn obligations of contract and morality, that after their death, she should succeed to what property they might leave, as their own child and natural heir ; and that in this way, her services and attention to them in their old age, should be compensated. The proof offered was not incompetent on the ground of interest. Whatever interest Isabella M’ Ninch had under the will of her husband, as executrix and *240 devisee, had ceased before her will could have operation. A strong desire that the property should go to Louisa Waters, may subject the act of making the will, to the suspicion of having been made for that purpose. But it promoted no interest of the testatrix. The testimony of a parent in support of the interest of a child may be suspected, but the objection of that bias affects only the credibility of the witness. The will was not offered to prove the declarations of Isabella M’Ninch, but her act. It was a circumstance tending to prove the assent of the testator to the will propounded, by a fulfilment of the mutual engagements made to Louisa Waters by herself and the testator. If Isabella M’Ninch had given fyer property to another person, such will would have been competent proof for the appellants, in reply to the letters produced by the appellee. The letters admitted to support the will, shewed the joint obligation of the testator and his wife to provide for Louisa Waters. If proof of the engagement were admissible, any act tending to shew that it was recognised, or denied by the parties, was also admissible,
On the facts of the case, the Court perceives no ground to disturb the verdict of the jury, and a new trial is refused.
Richardson, O’Neall, Evans, and Butler, JJ. concurred.